### SHAW et al. v. INDIO CATTLE CO.

No. 5683.

Circuit Court of Appeals, Fifth Circuit.

May 16, 1930.

W. F. Boggess, of Del Rio, Tex. (Boggess, La Crosse & Lowrey, of Del Rio, Tex., on the brief), for appellants.

C. C. Belcher and Brian Montague, both of Del Rio, Tex. (James Cornell, of San Angelo, Tex., and Belcher & Montague, W. P. Wallace, Jr., and Brian Montague, all of Del Rio, Tex., on the brief), for appellee.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

WALKER, Circuit Judge.

This was an action by the appellee against the appellants, who were partners doing business under the firm name of Shaw Brothers. The appellee asserted the claim that appellants were liable to it for the loss sustained by appellee in consequence of the failure and refusal of appellants to comply with terms of a written contract made in their name by E. R. Chambers for the purchase from appellee of a lot of lambs. The appellants resisted that claim on the ground that Chambers was not authorized to bind them by that contract because it provided for appellants paying more for the lambs than appellants authorized him to contract to pay. There was evidence to the following effect: The above-mentioned contract was entered into after Chambers had discussed with a representative of appellee the sale of lambs by the latter to Shaw Brothers, and had exhibited to appellee's representative, R. H. Martin, a form of draft and of a contract in his possession, which he had received from appellants. The transaction was concluded by the signing of a written contract, and by Chambers executing and delivering a draft of which the following is a copy:

"Sheep purchase contract herewith attached.
"Shaw Brothers
"Los Angeles, Cal., 8/17, 1922
"Pay to the Order of Indio Cattle Company $8,000.00 Eight Thousand 00/100 Dollars                    Shaw Brothers
"To Payable thru The Holtville Bank Holtville, Cal.
"[Signed]  E. R. Chambers."

That draft was made by filling out a printed form which had been supplied to Chambers as above stated. One of the appellants testified as follows: "The drafts I had printed, and they were sent to Mr. Chambers. When the blank drafts were sent to Mr. Chambers I saw to it myself that each draft had typewritten on the top, 'Sheep purchase contract herewith attached,' and also that each draft had typewritten on the lower left hand corner, 'Shaw Brothers, payable through the Holtville Bank, Holtville, Cal.' * * * Mr. Chambers was to buy for us sheep, and he was to give drafts in payment for those sheep. Mr. Chambers had instruc-

tions as to how much he should pay for the sheep. * * * Mr. Chambers was limited to ten cents per pound by instructions given by me for Shaw Brothers."

The forms of contract and draft furnished to Chambers and exhibited by him contained nothing with reference to the price to be paid for sheep bought. A representative of the appellee deposited for collection the draft, to which the contract was attached, in a bank at San Antonio, Tex., and requested that bank to telegraph the following to the Holtville Bank, of Holtville, Cal.: "Please wire us confidentially considering character, means, standing and responsibility of Shaw Brothers by E. R. Chambers."

In reply to that telegram the Holtville Bank sent to the San Antonio Bank a telegram stating: "Shaw Brothers thoroughly responsible stop E. R. Chambers has the authority to draw checks in payment of sheep."

One of the appellants was president of the Holtville Bank. S. E. Shaw, a brother of the appellants, was an officer of that bank and its active manager. There was evidence to the effect that S. E. Shaw received the above set out telegram to that bank and sent that bank's reply telegram after informing one of the appellants by telephone of the telegram to the bank and being directed by that appellant as to what answer to make to the first mentioned telegram. There was no evidence tending to prove that at or prior to the time the above-mentioned transaction was entered into the appellee knew or had reason to know of the directions given by appellants to Chambers as to the price to be paid for sheep. The evidence as to that transaction and the circumstances attending it furnished support for the inference that that transaction was such a one as is usual in the business the agent was employed to transact. The appellants complain of the court's refusal to direct a verdict in their favor, of rulings on objections to evidence, and of the court's refusal to give a requested written instruction which contained the following: "Unless you find from a preponderance of the evidence that E. R. Chambers, in signing the alleged contract on behalf of Shaw Brothers, had the express authority to do so, or that Shaw Brothers by some representation or conduct known to plaintiff's agent, R. H. Martin, at the time such contract was entered into induced or misled plaintiff's agent, R. H. Martin, to make said contract, then you will find for defendants, Shaw Brothers."

The evidence showed that Chambers was the general agent of the appellants to buy sheep, including lambs, for them. Such

an agent may bind his principal by a contract within the general scope of such an agency, though in entering into such contract he violated instructions of his principal as to the price to be paid, if such instructions were not communicated to the vendor and the latter had no knowledge or information thereof. Butler v. Maples, 9 Wall. 766, 19 L. Ed. 822. As there was evidence tending to prove all that was required to make the above-mentioned contract binding upon appellants, the court's refusal to instruct the jury to find in their favor was not error.

■ The evidence as to the circumstances attending the sending of the above set out reply telegram of the Holtville Bank was such as to make that telegram admissible as a statement authorized by one of the appellants that E. R. Chambers had authority to draw on appellants in payment of sheep. It was not error to permit that telegram to be introduced in evidence. There was no reversible error in any ruling on objections to evidence.

■ The above set out part of the written charge requested by appellants is not a correct statement of the law as to what is required to make binding on the principal a contract made by a general agent acting within the legitimate scope of the business to be transacted by him. The refusal to give that charge was not error.

The record shows no reversible error.

The judgment is affirmed.